**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THRID CIRCUIT

_____

No. 12-4273

_____

HEIDI CLAYTON,

Appellant,

v.

CITY OF ATLANTIC CITY; CHIEF OF POLICE JOHN MOONEY; JOSEPH NOLAN,
Deputy Chief of Police; LIEUTENANT GREGORY VANDENBERG,

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-09-cv-03045)
District Judge:  Hon. Joseph E. Irenas

_____

Submitted Under Third Circuit LAR 34.1(a)
September 10, 2013

Before:  RENDELL, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed:  September 12, 2013)

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Heidi Clayton appeals from an order of the United States District Court for the

District of New Jersey granting summary judgment in favor of Atlantic City on Clayton's

claim of sexual harassment.  For the reasons that follow, we will affirm.

## I.  Background[1]

Clayton has been a member of the Atlantic City Police Department ("ACPD") since 1994 and remains employed by the ACPD.  She alleges that she was subject to a work environment made hostile primarily by the sexually harassing behavior of Lieutenant Gregory Vandenberg, Deputy Chief of Police Joseph Nolan, and former Chief of Police John Mooney.

In 1999, Vandenberg began asking Clayton on dates.  As time progressed, Vandenberg's sexual advances became more overt.  In particular, he commented on her physical features, massaged her foot on his leg near his genitals in a Jacuzzi while on vacation,[2] and read her a love poem over the phone.  Later in 2006, Clayton came under the direct supervision of Vandenberg.  As her supervisor, Vandenberg immediately altered her work schedule, changing her days off from Friday and Saturday to Thursday and Friday, despite her seniority over other officers that entitled her to have those requested days off.  Vandenberg also attempted to force Clayton to take her vacation time in five-day blocks, instead of on her requested schedule.  Although the regulations required officers to take their vacation in five-day blocks, it was allegedly a common practice for officers not to adhere to that requirement.  Finally, in 2009, Vandenberg singled Clayton out and confronted her for wearing a non-uniform hat during "muster

---

[1] In accordance with our standard of review, see *infra* note 5, we set forth the facts in the light most favorable to Clayton.

[2] In her deposition, Clayton testified that she and Vandenberg were friends and that Clayton and her boyfriend would dine and travel together with Vandenberg's family on vacation.  Apparently, this incident happened during a vacation Clayton took together with Vandenberg and his family.

time."[3]  According to Clayton, no other officers, male or female, were reprimanded for similar or more egregious uniform violations during "muster time."

Between 2006 and 2010, Deputy Chief Nolan disciplined and reprimanded Clayton while she was under his direct command.  On May 20, 2007, Nolan disciplined Clayton with a one-day suspension for leaving the Atlantic City limits without permission to purchase food in a neighboring town, apparently a common practice among officers, and one for which no other officer had received discipline.  Nolan also singled out and reprimanded Clayton for rolling her eyes and stretching her neck during roll call, conduct that Clayton says went unpunished for other officers.  He further took issue with Clayton calling a Sergeant by his first name, an allegedly routine practice for which other male and female officers were not punished.  Nolan scrutinized Clayton's log sheets[4] for their quality and assigned her to a traffic post as punishment for submitting incomplete log sheets, while other officers went unpunished for their failure to submit them.

Clayton also claims that Mooney, who at the time was the Chief of Police, also participated in sexual harassment and gender discrimination.  According to Clayton, first, Mooney refused to allow Clayton to forfeit a sick or vacation day and forced Clayton to serve her suspensions even though Mooney had allowed a male officer to use his sick or vacation day in lieu of serving his suspension.  Second, Mooney grabbed Clayton's

---

[3] "Muster time" is the last fifteen minutes before the end of a police officer's shift, when the officer turns in his or her equipment and prepares to go home.  *Clayton v. City of Atlantic City*, No. 09-3045, 2012 WL 5200027, at *1 n.4 (D.N.J. Oct. 22, 2012).

[4] Log sheets are forms on which officers record information about routine police activities.

3

buttocks and commented that "that's the only thing she has going for her." (App. at 117.) Third, after she was head-butted by a prisoner and requested that he be charged, Mooney scolded her stating that if she had "known [her] place and kept [her] mouth shut, [she] wouldn't have been head-butted." (App. at 114.)

In 2000, ACPD transferred Clayton to a different unit that resulted in a three percent pay decrease and limited her opportunities to earn overtime compensation. Clayton believes she was transferred due to her gender. Sergeant Rodney Ruark disciplined Clayton for inappropriate conduct at a grand jury hearing, in which she divulged information about an officer's disciplinary record to a civilian. According to Clayton, Ruark also made inappropriate comments over the police radio to other officers, such as "which one of those guys is hitting her in the ass tonight?" (App. at 90.) Sergeant David Madamba reprimanded Clayton for not holding her rifle correctly. Captain Joseph Fair admonished Clayton when, during an incident in which she was restraining a suspect, she instructed a much larger male officer to open a door, rather than having that officer restrain the suspect; Captain Fair allegedly stated that her conduct was incorrect because she was "just a girl." (App. at 167.)

Clayton testified repeatedly to her belief that the above incidents occurred because she was a woman. But she also repeatedly testified to what she called a "[r]evenge management" culture at ACPD. (App. at 109.) That culture, she explained, meant that if you were not liked by a superior, regardless of gender, it was common for the superior to attempt to undermine your career. Moreover, in 2006, after a fellow female officer filed a sexual harassment suit against ACPD, Clayton called in to a radio talk show that was

4

discussing the suit and stated categorically that she had many problems with ACPD but sexual harassment was not one of them.

On June 23, 2009, Clayton filed her complaint against Atlantic City, Mooney, Nolan, and Vandenberg in the United States District Court for the District of New Jersey, alleging constitutional violations pursuant to 42 U.S.C. § 1983 and asserting state law claims under the New Jersey Conscientious Employee Protection Act and the New Jersey Law Against Discrimination ("NJLAD"). The District Court dismissed all claims against the individual defendants and also dismissed the Conscientious Employee Protection Act claim and the § 1983 claim based on First Amendment retaliation and indifference to Constitutional rights.

After discovery, Atlantic City moved for summary judgment on the remaining claims. On October 22, 2012, the District Court granted the motion on all of Clayton's remaining claims, concluding, relevant to this appeal, that there was insufficient evidence from which a reasonable jury could find that Atlantic City's actions were severe or pervasive enough to create a hostile work environment.

Clayton then filed this timely appeal.

## II.    Discussion[5]

On appeal, Clayton only pursues her claim based on hostile work environment sexual harassment.  She argues that the District Court improperly applied the summary judgment standard by failing to construe facts in the light most favorable to her. Specifically, Clayton contends that there was a genuine dispute of material fact as to whether she was exposed to hostile work environment sexual harassment.

The NJLAD "specifically prohibits employment discrimination based on sex." *Lehmann v. Toys "R" Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993) (citing N.J. Stat. Ann. § 10:5-12).  Although the statute does not expressly address sexual harassment, the New Jersey Supreme Court has held that "[s]exual harassment is a form of sex discrimination that violates … the [NJ]LAD." *Id.*  As a general matter, sexual harassment claims are divided into two categories: (1) quid pro quo sexual harassment, which "occurs when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment" and (2) hostile work environment sexual harassment, which

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We exercise plenary review of a district court's grant of summary judgment, and apply the same standard as the district court." *Powell v. Symons*, 680 F.3d 301, 306 (3d Cir. 2012).  "[S]ummary judgment is appropriate where the court is satisfied 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (quoting Fed. R. Civ. P. 56(c), which has since been re-numbered as 56(a), with the further change of the word "issue" to "dispute") (internal quotation marks omitted).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In reviewing the record, we must construe all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255.

"occurs when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile." *Id.*

A hostile work environment sexual harassment claim under the NJLAD requires the plaintiff to show the following four prongs: "the complained-of conduct (1) would not have occurred *but for* the employee's gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable woman* believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive*." *Id.* at 453. "[W]hile separable to some extent," the second, third, and fourth prongs "are interdependent," because the severe or pervasive prong is determined by whether a reasonable person in the protected class, in this case a reasonable woman, would believe that "the conditions of employment are altered and [the] working environment is hostile" or abusive. *Id.* at 453-54.

Whether conduct is "severe or pervasive" under the NJLAD "involves examination of (1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008) (internal quotation marks omitted). We must assess the conduct cumulatively, considering "the totality of the relevant circumstances." *Id.* But we should also "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S.

7

775, 788 (1998) (internal quotation marks omitted).[6] In other words, we are instructed to filter out "simple teasing, offhand comments, and isolated incidents (unless extremely serious.)" *Id.* (internal quotation marks and citation omitted). Furthermore, in New Jersey it is "rare and extreme [for] … a single incident [to] be so severe that it would … make the working environment hostile." *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998) (internal quotation marks omitted).

In this case, no reasonable jury could conclude that the alleged conduct was "severe or pervasive." The alleged actions taken by Atlantic City consisted of disciplinary actions and reprimands for failure to follow police rules and regulations. And Clayton herself admitted that the culture of ACPD was one in which if an officer was not liked, regardless of gender, action was taken against that officer. Even crediting Clayton's view of the actions as true, there were only a few sporadic incidents over the course of several years. No reasonable jury could conclude that that conduct was "severe or pervasive" to the point that Clayton's working environment was hostile. *Cf. Faragher*, 524 U.S. at 788 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment … ."). And, although rude and distasteful, the alleged lewd remarks on the radio and the incident where Mooney grabbed Clayton's buttocks in public and commented that it was "the only thing she has

---

[6] New Jersey courts often look to the interpretation of federal discrimination laws when construing NJLAD. *See Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 906 (N.J. 1990) ("In a variety of contexts involving allegations of unlawful discrimination, this Court has looked to federal law as a key source of interpretive authority.").

going for her[,]"[7] (App. at 117), even when taken together with the alleged disciplinary actions, fall short of reaching the level of conduct so severe or pervasive as to render Clayton's work environment hostile. *Cf. Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (concluding "lone grabbing [of the buttocks] incident … does not rise to the level of severe or pervasive conduct"). Accordingly, we conclude that the District Court properly granted summary judgment to Atlantic City.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[7] Mooney denies the offensive conduct and statement that Clayton attributes to him, but, given our standard of review, we will credit Clayton's account of the events for purposes of this decision.